IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PHIL-INSUL CORP. d/b/a INTEGRASPEC,<br><br>                Plaintiff,<br><br>   vs.<br><br>REWARD WALL SYSTEMS, INC., BUILDBLOCK BUILDING SYSTEMS, LLC, NUDURA CORPORATION, POLYFORM, A.G.P., Inc., and AMVIC CORPORATION,<br><br>              Defendants. | CASE NO. 8:12CV91<br><br><br>MEMORANDUM<br>AND ORDER |

    This matter is before the Court on the Motion for Summary Judgment (Filing No. 169) filed by Defendants Polyform, A.G.P., Inc. ("Polyform"), and Nudura Corporation ("Nudura"), the Motion for Partial Summary Judgment (Filing No. 178) filed by Defendant Reward Wall Systems, Inc. ("Reward Wall"), and the Motion for Partial Summary Judgment (Filing No. 189) filed by Defendant Amvic Corporation. All three motions seek summary judgment of non-infringement with respect to claims found in United States Patent No. 5,428,933 (the "'933 Patent"). For the reasons discussed below, the Motions will be granted.

## BACKGROUND

    The '933 Patent relates to bidirectional and reversible insulating concrete forms ("ICFs"). It was issued on July 4, 1994, and a reexamination certificate was issued on September 21, 2010. Plaintiff Phil-Insul Corp. d/b/a Integraspec ("Integraspec") is the assignee of record for the '933 Patent.

ICFs are used to build concrete walls for various types of buildings. They are composed of two Styrofoam panels, spaced apart and held together by "ties or webs." They are stacked to erect a hollow wall into which concrete is poured and allowed to set. The bidriectionality and reversibility of the ICFs relates to their ability to interconnect with each other regardless of how the ICFs are rotated (horizontally or vertically). The ICFs remain in place after the concrete sets to serve as insulation for the building. For the ICFs to work, they must be securely interconnected when stacked. The parties' dispute concerns the interconnecting means of their respective ICFs.

## FACTS

Unless specified otherwise, the following facts are those that are stated in the parties' briefs and supported by pinpoint citations to evidence in the record, that the parties have admitted, or that the parties have not properly resisted as required by NECivR 56.1 and Federal Rule of Civil Procedure 56.[1]

### I. The Parties and Jurisdiction

Integraspec, Nudura, Polyform, and Amvic are all Canadian corporations. Integraspec, Nudura, and Amvic have principal places of business in Ontario, Canada. Polyform has its principal place of business in Quebec, Canada. Reward Wall is a Kansas corporation with its principal place of business in Omaha, Nebraska.

---

[1] The Defendants' briefs in support of their Motions each contain a statement of material facts that comply with NECivR 56.1(a). Integraspec addressed those statements of material fact in its opposition briefs, but also included its own, separate statement of facts in each of its opposition briefs. Integraspec's separate statement of facts relates to the alleged insubstantial difference between the accused ICF devices and the ICF disclosed in the '933 Patent for purposes of Integraspec's arguments that the accused ICFs infringe the '933 Patent under the doctrine of equivalents. Because the Court finds that the doctrine of prosecution history estoppel precludes the accused ICFs from infringing the '933 Patent under the doctrine of equivalents, the Court does not include Integraspec's separate statement of facts in this Memorandum and Order's "FACTS" section.

Integraspec brought this action for patent infringement under the patent laws of the United States.  *See* 28 U.S.C. §§ 1331, 1338.

## II.  The '933 Patent[2]

Integraspec, Polyform, Nudura, Reward Wall, and Amvic point to the following claims of the '933 Patent as relevant to the present Motions: Claims 1, 2, 5, and 7 through 10.  Claim 1 is an independent claim.  The rest of the claims are dependent claims, dependent on Claim 1.

Claim 1[3] of the '933 Patent states:

In **[**an**]** a *bi-directional and reversible* insulating construction member having *substantially planar ends and* top and bottom edges and interconnecting means on said top and *on said* bottom edges, the improvement wherein *each* said *top* interconnecting means **[**comprise**]** *and each said bottom interconnecting means has a pattern, each pattern comprising* at least two *longitudinally extending* rows of alternating, *continuous, immediately adjacent* projections and recesses, *extending continuously along the entire length of said top and bottom edges, the end projection in one row flush with at least a portion of one of said end planes, within each said pattern each of said* projections and recesses *in each one of said at least two rows within said pattern* being of substantially the same dimension, <u>wherein *within each said pattern* said recess of one row is adjacent said projection of the other row</u>, and wherein said interconnecting means *patterns* on said top and bottom edges are *the same and are* offset arranged such that said recess of one row *in said pattern* on said top edge is opposed to said projection of an opposite row **[**of**]** *in said pattern on* said bottom edge; whereby said insulating construction member can be interconnected with a like member in a bi-directional **[**or**]** and reversible manner.

Claim 2 of the '933 Patent states:

An insulating construction member according to claim 1, wherein said member is an insulating construction block *comprising two panels, each of said panels having a pattern on the top and bottom edges, each of said*

---

[2] Words added during the reexamination are in italics; deleted words are in bold brackets.  *See* Filing No. 92-2.

[3] The "adjacent" limitation, the limitation at issue in the present Motions, is underlined.

> *patterns on each of said panels comprising at least one longitudinally extending row of alternating, continuous, immediately adjacent projections and recesses and each of said projections and each of said recesses within each said pattern in said at least one row being of substantially the same dimension.*

Claim 5 of the '933 Patent states: "An insulating construction member according to claim 1, wherein the interconnecting means includes a raised sealing member positioned adjacent to said rows of alternating projections and recesses."

Claim 7 of the '933 Patent states: "An insulating construction member according to claim **[**1**]** *8*, wherein said interconnecting means extend along the entire length of said top and bottom edges *and each of said projections is connected to the construction member on only one of the projection's six sides*."

Claim 8 of the '933 Patent states: "An insulating construction member according to claim 1, wherein said projections and recesses of said interconnecting means are of a rectangular **[**configuration**]** *shape, each of said projections having six sides*."

Claim 9 of the '933 Patent states: "An insulating construction member according to claim **[**1**]**, wherein said member has a configuration selected from the group consisting of straight, angled, T-shaped or X-shaped."[4]

Claim 10 of the '933 Patent states: "An insulating construction member according to claim 1, wherein said member is formed of a **[**formed**]** *foamed* polymeric material."

A *Markman* hearing was held on June 29, 2012. On July 19, 2012, the Court entered a Memorandum and Order construing three claim terms found in both Claim 1 and Claim 19 of the '933 Patent: (1) "adjacent"; (2) "substantially the same dimension";

---

[4] In their statement of undisputed material facts, Polyform, Nudura, and Amvic state, and Integraspec does not dispute, that Claim 9 is dependent on Claim 2, not Claim 1. (Filing No. 170, at CM/ECF p. 7 ¶ 19; Filing No. 190, at CM/ECF p. 4 ¶ 16; Filing No. 194, at CM/ECF p. 8; Filing No. 199, at CM/ECF p. 5.) The '933 Patent, however, states that Claim 9 is dependent on Claim 1. (Filing No. 92-1.)

4

and (3) "substantially planar ends." The Court construed "adjacent" to mean "next to . . . on the same panel or sidewall"; "substantially the same dimension" to mean "have the same measurable length, breadth, area and volume, with only minor variations in dimension of up to about 10%"; and "substantially planar ends" to mean "substantially flat ends."

## III. Polyform and Nudura

Nudura has sold an ICF called the NUDURA ICF in five different models "during the period commencing with the date that is six years prior to the date the Complaint in this action was filed." (Filing No. 170, at CM/ECF p. 7 ¶ 20.) Those five models are the standard form, the 90° standard form, the 45° standard form, the short T-form, and the long T-form (collectively referred to as the "accused Nudura ICFs"). Each of these models has a panel (or sidewall) with a single row of alternating projections and recesses on their top and bottom edges. Integraspec accuses these models of infringing the '933 Patent.

## IV. Reward Wall

Reward Wall has sold an ICF called the eForm ICF[5] in four different models "during the period commencing with the date that is six years prior to the date the Complaint in this action was filed." (Filing No. 179, at CM/ECF p. 4 ¶ 21.) Those four models are the straight form, the 90° corner form, the 45° corner form, and the ledge form. Although Reward Wall does not make or sell a "T-Form" ICF, two straight form ICFs can be made into a T-form by cutting one at an intermediate location and mating

---

[5] Reward Wall has also sold an iForm ICF, which Integraspec contends infringe the '933 Patent. Reward Wall's Motion only concerns the eForm ICF.

the other with it.  Integraspec accuses the straight form, the 90° corner form, and the 45° corner form of infringing the '933 Patent.  Integraspec also accuses the straight form of infringing the '933 Patent when two of them are used to make a T-form.[6]

Reward wall contends that each of the accused Reward Wall ICFs have panels (or sidewalls) with a single row of alternating projections and recesses on their top and bottom edges.  Integraspec asserts that the accused Reward Wall ICFs have panels that "include an additional support structure that is integral with the row of projections and recesses and augments the strength of the row of alternating projections and recesses; therefore, the [accused Reward Wall ICFs] do[ ] **not** have a 'single row' of alternating projections and recesses."  (Filing No. 198, at CM/ECF p. 7 ¶ 26-R.)

## V.  Amvic

Amvic has sold an ICF called the Amvic ICF Block in four different configurations "during the period commencing with the date that is six years prior to the date the Complaint in this action was filed."  (Filing No. 190, at CM/ECF p. 4, ¶ 18.)  Integraspec has accused those configurations of infringing on the '933 Patent.  Those configurations are a Straight Reversible Block, a 90° Corner Reversible Block, a 45° Corner Reversible Block, and a T-Block (collectively referred to as the "accused Amvic ICFs").

Amvic contends that each of the accused Amvic ICFs has only a single row of alternating projections and recesses on their top and bottom edges.  Integraspec contends that the interconnecting means on the top and bottom edges of Amvic's ICF products "can be characterized as: (a) a single row comprising a center section with two structural support 'wings;' and (b) at least two rows, one row comprising the alternating

---

[6] These eForm ICFS-the straight form, 90° corner form, 45° corner form, and "T-Form"-are collectively referred to as the "accused Reward Wall ICFs."

projections and recesses 'wings' and the second row comprising the center projection and recess large center sections of the middle row." (Filing No. 199, at CM/ECF p. 5.)[7]

## STANDARD

"Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1325 (Fed. Cir. 2010) (citing Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). The court will view the facts in the light most favorable to the non-moving party. *Gabrielidis v. Prince Sports Group, Inc.*, 243 F.3d 565 (Fed. Cir. 2000). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce "'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P.

---

[7] The Court notes Amvic's argument relating to Integraspec's failure to comply with the District of Texas's Patent Rule 3-6. (*See* Filing No. 212-2 at CM/ECF p. 10.) The Court need not address this argument because, as explained below, it finds that the accused Amvic ICFs do not infringe the claims of the '933 Patent relevant to Amvic's Motion literally or under the doctrine of equivalents.

7

56(e)). It "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48.

In other words, in deciding a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "'genuine issue for trial'"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).

## DISCUSSION

The Court's "infringement analysis is a two[-]step inquiry. 'First, the court determines the scope and meaning of the patent claims asserted, and [second,] the properly construed claims are compared to the allegedly infringing device.'" *Cordis Corp. v. Boston Scientific Corp.*, 658 F.3d 1347, 1354 (Fed. Cir. 2011) (quoting *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998)). "With regard to the second step of the infringement analysis, the patentee must prove that the accused device embodies every limitation in the claim, either literally or by a substantial equivalent." *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1573 (Fed. Cir. 1994) (citing *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 3 F.3d 404, 407 (Fed. Cir. 1993)). While the first step of the inquiry is a "question of law," *Energy Transp. Group, Inc. v. William Demant Holding A/S*, Nos. 2011-1487, 2011-1488, 2011-1489, 2012 WL 4840813, at *3

(Fed. Cir. Oct. 12, 2012) (citing *Cybor Corp.*, 138 F.3d at 1456), "[i]nfringement, whether literal or under the doctrine of equivalents, is a question of fact." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129-30 (Fed. Cir. 2011) (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)).

Polyform, Nudura, Reward Wall, and Amvic contend that the accused ICFs do not infringe the '933 Patent because they do not contain the "adjacent" limitation.[8] Claim 1 contains the "adjacent" limitation. As noted previously, Claim 1 is the only independent claim relevant to the present Motions, and all of the other claims Integraspec contends have been infringed are dependent claims that are dependent on Claim 1. "'One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim.'" *Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) (quoting *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989)). Therefore, the present Motions turn on whether the accused ICFs contain the "adjacent" limitation.

**I. Literal Infringement**

"Literal infringement requires that each and every claim limitation be present in the accused product." *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1378 (Fed. Cir. 2006) (citing *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.,* 389 F.3d 1370, 1378 (Fed. Cir. 2004)). "If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).

---

[8] The "adjacent" limitation states: "wherein within each said pattern said recess of one row is adjacent said projection of the other row." (Filing No. 92-2, column 1, lines 29-41.) The Court construed this limitation to mean "wherein within each said pattern said recess of one row is *next to* said projection of the other row *on the same panel or sidewall.*" (Filing No. 168.)

9

The only devices that Integraspec contends literally infringe the '933 Patent are the accused Amvic ICFs. In support of its argument, Integraspec contends that the accused Amvic ICFs should be characterized in one of two ways, one of those ways being that the accused Amvic ICFs have three, and therefore "at least two," rows of projections and recesses on the same panel or sidewall.

As noted previously, the "adjacent" limitation, as construed by the Court, reads as follows: "wherein within each said pattern said recess of one row is *next to* said projection of the other row *on the same panel or sidewall*." Thus, although the "adjacent" limitation requires the "at least two" rows of alternating projections and recesses be on the same panel or sidewall, it requires that, between rows, a recess be next to a projection, not another recess.

Even if the pattern of projections and recesses found on the accused Amvic ICFs may be characterized as having "at least two" rows of projections and recesses on the same panel or sidewall, Integraspec has failed to point to any evidence from which a reasonable finder of fact could conclude that the recess of one row is "next to" a projection of the other row "on the same panel or sidewall." Instead, the evidence the parties have pointed to indicates that a recess (projection) of one row is "next to" a recess (projection) of the other row.[9] Therefore, Integraspec has failed to meet its

---

[9] Integraspec seems to acknowledge that, on the accused Amvic ICFs, a recess (projection) of one row is next to a recess (projection) of the row or rows next to it. *See* Filing No. 199, at CM/ECF p. 14:

> As seen in Figure 3, above, there is a center row of large projections and recesses and a row of small projections and recesses next to, abutting, the center row on the same panel. Each small projection contacts the side of the large projection but is nevertheless a separate "row." . . . Simply because the projections of the three rows in the Amvic interconnecting means are transversely attached to one another does not make them a 'single' row as Amvic argues.

10

burden of pointing to evidence from which a reasonable finder of fact could conclude that the accused Amvic ICFs literally infringe the '933 Patent.[10]

As previously noted, Integraspec does not contend that the accused Nudura ICFs or the accused Reward Wall ICFs literally infringe the '933 Patent. Even if Integraspec did contend that those ICFs literally infringed the '933 Patent, Integraspec has not pointed to any evidence that would support such a contention. Therefore, Polyform and Nudura's Motion and Reward Wall's Motion will be granted to the extent that they assert their accused ICFs do not literally infringe the '933 Patent.

## II. Doctrine of Equivalents

"'Infringement may be found under the doctrine of equivalents if every limitation of the asserted claim, or its "equivalent," is found in the accused subject matter, where an "equivalent" differs from the claimed limitation only insubstantially.'" *Abraxis*, 467 F.3d at 1379 (quoting *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1315 (Fed. Cir. 1998)). This test is called the "insubstantial differences test." *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008). Alternatively, "[a]n accused device that 'performs substantially the same function in substantially the same way to obtain the same result' as the patented invention may infringe under this doctrine."

---

[10] The Court also notes that the words "continuous, immediately adjacent" were added to the '933 Patent (*see* Filing No. 92-2 at column 1, lines 32-33 ("at least two longitudinally extending rows of alternating, continuous, *immediately adjacent* projections and recesses[.]")), Integraspec has acknowledged that limitation is "definitely a spatial limitation because it was [used] [to] overcom[e] the Board's definition of a longitudinal row that could have spaces between the objects comprising the longitudinal row" (Filing No. 194, at CM/ECF p. 35), and the evidence the parties have pointed to in the record reflects that the two smaller rows in the accused Amvic ICFs have spaces in between them. Thus, it appears that the accused Amvic ICFs do not literally contain the "immediately adjacent" limitation, and amending Claim 1 to include that limitation may have resulted in an estoppel that would preclude Integraspec from asserting that an ICF that has spaces between projections and recesses within the same longitudinal row infringes the '933 Patent. *See generally Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1355 (Fed. Cir. 2010) (citing *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17 (1997)); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1013 (Fed. Cir. 2006) (citing *Seachange Int'l, Inc. v. C-COR, Inc.,* 413 F.3d 1361, 1378 (Fed. Cir. 2005)).

*Abraxis*, 467 F.3d at 1379 (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)).  This test is called "the function-way-result test."  *Voda*, 536 F.3d at 1326.

"The doctrine of equivalents is not a talisman that entitles a patentee to a jury trial on the basis of suspicion; it is a limited remedy available in special circumstances, the evidence for which is the responsibility of the proponent."  *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1210 (Fed. Cir. 2001) (citing *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999)).  Furthermore, "[t]he determination of infringement under the doctrine of equivalents is limited by two primary legal doctrines, prosecution history estoppel and the 'all elements' rule, the applications of which are questions of law."  *DePuy Spine*, 469 F.3d at 1013 (citing *Seachange*, 413 F.3d at 1378).  Because the Court finds the doctrine of prosecution history estoppel precludes the accused ICFs from infringing the '933 Patent under the doctrine of equivalents, the Court does not address the "all elements rule,"[11] or whether Integraspec has satisfied its burden under the "insubstantial differences test" or "function-way-result test."

"Under prosecution history estoppel, a patentee may not seek to recapture as an equivalent subject matter surrendered during prosecution."  *Trading Techs.*, 595 F.3d at 1355 (citing *Warner-Jenkinson*, 520 U.S. 17 (1997)).  "'[E]stoppel may arise from matter surrendered as a result of amendments to overcome patentability rejections, or as a

---

[11] "'[T]he "all elements rule" provides that the doctrine of equivalents does not apply if applying the doctrine would vitiate an entire claim limitation.'" *Seachange*, 413 F.3d at 1378 (alteration in original) (quoting *Asyst Techs., Inc. v. Emtrak, Inc.,* 402 F.3d 1188, 1195 (Fed. Cir. 2005)).  "[T]his rule empowers a court to perform again the standard 'insubstantial variation' test for equivalency, but this time as a question of law."  *Trading Techs.*, 595 F.3d at 1355.

12

result of argument to secure allowance of a claim.'"[12]  *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 826 (Fed. Cir. 1999) (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1459-60 (Fed. Cir. 1998)).  Accused devices which "fall within the scope of the estoppel" are not subject to infringement under the doctrine of equivalents.  *See id.* at 827.

A "narrowing amendment . . . creates a presumption that the patentee surrendered the territory between the original claims and the amended claims."  *Glaxo*, 356 F.3d at 1352 (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002) (*Festo VIII*)).  To rebut this presumption, the patentee must "show[ ] that the alleged equivalent could not reasonably have been described at the time the amendment was made, or that the alleged equivalent was tangential to the purpose of the amendment, or that the equivalent was not foreseeable (and thus not claimable) at the time of the amendment."  *Id.*

Polyform, Nudura, Reward Wall, and Amvic argue that a narrowing amendment occurred during the original prosecution of the '933 Patent that limited the scope of the

---

[12] Although the Court finds that there was a narrowing amendment that precludes the accused ICFs from infringing the '933 Patent under the doctrine of equivalents, the Court notes that the prosecution history seems to reflect an argument based estoppel that precludes an ICF with only one row of projections and recesses on a panel from infringing the '933 Patent.  *See* Filing No. 92-4, at INT001045; Filing No. 92-5, at INT001405; *Glaxo Wellcome, Inc. v. Impax Labs., Inc.*, 356 F.3d 1348, 1357 (Fed. Cir. 2004) ("This court has noted that subject matter surrendered via claim amendments during prosecution is also relinquished for other claims containing the same limitation. . . . Prosecution history estoppel . . . is not limited to the applicant's own words, but may embrace as well the applicant's responses to the examiner's actions. If the patentee does not rebut an examiner's comment or acquiesces to an examiner's request, the patentee's unambiguous acts or omissions can create an estoppel."); *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1252 (Fed. Cir. 2000) (quoting *Cybor,* 138 F.3d 1448, 1457 (Fed. Cir. 1998; *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1208 (Fed. Cir. 1992)) ("An objective standard is applied when looking at the prosecution history, the proper inquiry being 'whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter.' . . . One of the public policy principles underlying the doctrine is that 'other players in the marketplace are entitled to rely on the record made in the Patent Office in determining the meaning and scope of the patent.'").

13

'933 Patent such that an ICF with less than two rows of alternating projections and recesses on a given panel or sidewall cannot infringe the '933 Patent. They point to the prosecution history wherein the patentee amended Claim 1 so that it included the limitation "at least two rows" to describe the alternating projections and recesses on the disclosed ICF, and the limitation "adjacent" to describe the relationship between the recesses of one row of the "at least two rows" to the projections on the other row or rows. They also assert Integraspec has failed to rebut the presumption of surrender.

Integraspec seems to acknowledge that a narrowing amendment occurred during the original prosecution of the '933 Patent. Integraspec appears to argue, however, that either no estoppel resulted from the narrowing amendment or that the accused ICFs are outside of the scope of surrender. Integraspec contends that the prior art the patent office relied upon when it rejected original Claim 1 disclosed ICFs having "at least two" rows of projections and recesses on a panel or sidewall and, therefore, the number of rows disclosed in the '933 Patent was not the basis for the rejection. Thus, it argues that amending Claim 1 to include "at least two rows" cannot constitute a surrender of claim scope or an estoppel that precludes an ICF with one row of projections and recesses on a panel or sidewall from infringing under the doctrine of equivalents a claim limitation reciting at least two rows on a panel or sidewall.

The Court finds that a narrowing amendment occurred with respect to Claim 1. The prosecution history reflects that when Claim 1 was originally submitted to the patent office, it did not contain the "adjacent" limitation or indicate the minimum number of rows of projections and recesses that needed to be on the ICF. The patent office rejected

14

Claim 1, as well as Claim 4 which disclosed an ICF block with "at least one row" of interconnecting means, under 35 U.S.C. § 102, stating those claims were

> clearly anticipated by Horobin '969. Horobin shows and discloses an insulating construction block comprising a pair of parallel insulation side members (12, 14) having top an[d] bottom edges and both having interconnecting means, said interconnecting means at the top and bottom edges comprising a row of alternating projections (38, 45) and recesses (40, 46) . . . Since the top and bottom edges of the construction member having substantially same configuration, it is in inherently to be reversibly interconnected over another like member.

(Filing No. 92-3, at INT000103-04.)[13] The patent office also noted another piece of prior art, "O'Neill '261 [which] shows [an] insulating block having one row of alternating projections and recesses . . ."[14] (Filing No. 92-3, at INT000105.) Thus, the patent office considered the prior art, which depicted construction blocks with two total rows of projections and recesses (one row per panel), to disclose ICF blocks with only one row of projections and recesses for purposes of rejecting original Claims 1 and 4.[15]

---

[13] The Court notes that during the reexamination of the '933 Patent, the patentee argued that the top view of Horobin '969, which depicts a construction block with only a single row of projections and recesses per panel, "does not show 'at least two' longitudinally extending rows in the top interconnecting means pattern[.]" (Filing No. 92-4, at INT001094.)

[14] *See* U.S. Patent No. 5,163,261; *see also* Filing No. 213 at CM/ECF p. 11.

[15] Integraspec now asserts the Horobin '969 prior art was erroneously characterized as having only one row of alternating projections and recesses. The patent office, however, deemed Horobin '969 to disclose a one-row configuration and rejected Claim 1 as being anticipated by Horobin '969. The patentee did not appeal the denial, but instead amended Claim 1, as described below. The Court will not revisit the question of whether the rejection of Claim 1 as being anticipated by Horobin '969 was correct. *See Warner-Jenkinson*, 520 U.S. at 33 n.7:

> We do not suggest that, where a change is made to overcome an objection based on the prior art, a court is free to review the correctness of that objection when deciding whether to apply prosecution history estoppel. As petitioner rightly notes, such concerns are properly addressed on direct appeal from the denial of a patent, and will not be revisited in an infringement action.

The patent office also rejected Claim 1 based on U.S. Patent No. 5,060,446 ("Beliveau '446"),[16] explaining only that Claim 1 was "clearly anticipated by Beliveau '466." (Filing No. 92-3, at INT000103.) The figures Integraspec points to in Beliveau '446 reflect an ICF panel with three rows of alternating projections and recesses, but wherein, between those rows on the same panel, the projections (recesses) are next to projections (recesses), not recesses (projections).[17] None of the claims the patent office rejected based on Beliveau '446 contained the "adjacent" limitation. (*Compare* Filing No. 92-3, at INT000048-50, *with id.* at INT000103.)

Considering together the rejections based on Horobin '969 and Beliveau '466, it seems clear that the patent office would not have allowed a claim that disclosed an ICF with only one row of projections and recesses on a panel, or a claim, even if it disclosed a panel with more than one row of projections and recesses on a panel, that disclosed an ICF where the projection (recess) of one row was "adjacent" to a projection (recess) on another row on that same panel.[18]

---

[16] *See* Filing No. 194-22 at CM/ECF p. 11-12.

[17] *See* Filling No. 92-4, at INT001090 ("Patentee's representative argued the difference in the limitation in the claims that at least two rows must have a projection in one row that is adjacent to the recess in the other row was not shown in Beliveau.")

[18] The Court notes that original Claim 6 disclosed "[a]n insulating construction member according to claim 1, wherein said interconnecting means include two rows of alternating projections and recesses." (Filing No. 92-3 at INT000049). The "adjacent" limitation was not included in Claim 6, either directly or through Claim 1. The patent office rejected Claim 6 "as being clearly anticipated by Beliveau '466," but did not reject Claim 6 as being clearly anticipated by Horobin '969." (*Id.* at INT000103.)

Original Claim 7 disclosed "[a]n insulating construction member according to claim 6, wherein a recess of one row is adjacent a projection of the other row." (*Id.* at INT000049.) Thus, original Claim 7 disclosed an ICF with "two rows" of projections and recesses where the recess of one of the two rows is "adjacent" to a projection of the other row. The patent office "objected to" original Claim 7 "as being dependent upon a rejected base claim," but stated that it

> would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims. The prior art of record does not show[ ] and

In response to the rejection, the patentee amended Claim 1 so that the claim required "<u>at least two rows of</u> alternating projections and recesses, said projections and recesses being of substantially the same dimension<u>, wherein said recess of one row is adjacent said projection of the other row</u> . . ." on an ICF. (Filing No. 92-3, at INT000116.) The patent office accepted Claim 1 after the patentee made those amendments, and nothing indicates Claim 1 would have been deemed patentable over Horobin '969 and Beliveau '446 absent those amendments.

It is clear from the record that the patentee attempted to claim and describe, but the patent office considered the prior art to disclose, (1) an ICF on which there could be a single row of alternating projections and recesses on a given panel, and (2) an ICF on which there were at least two rows of alternating projection and recesses but where the recess of one of the two rows did not need to be next to a projection of another row. Thus, it is apparent that, at the time of the amendment, such ICFs were foreseeable and could be described. Finally, as indicated previously, it is clear that the amendment to Claim 1 was made to avoid Horobin '969 and Beliveau '446 and maintain Claim 1's patentability. Therefore, Integraspec has failed to show that the above mentioned equivalents are tangential to the purpose of the amendment.[19] As a result, prosecution

---

> disclose[ ] the interconnecting means of an [ICF] including two rows of alternating projections and recesses, wherein said recess of one row is adjacent to said projection of the other row.

(Filing No. 92-3 at INT000104.) In other words, the patent office indicated that it would only allow a claim if it disclosed an ICF with more than one row of projections and recesses on a panel and the projections (recesses) of one row were not next to projections (recesses) of another row on that same panel.

[19] *Compare* Filing No. 92-3 at INT000103, *with In re Buszard*, 504 F.3d 1364, 1366 (Fed. Cir. 2007) (quoting *In re Paulsen*, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994)) ("'A rejection for anticipation under section 102 requires that each and every limitation of the claimed invention be disclosed in a single prior art reference.'"), *and Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1383 (Fed. Cir. 2005) (quoting *Insituform*

history estoppel precludes an ICF with one row of projections and recesses on a panel or sidewall or an ICF with more than one row of projections and recesses on a panel or sidewall but where, between rows, a projection (recess) is next to a projection (recess), from infringing the '933 Patent under the doctrine of equivalents.

The alleged equivalents here are: (1) the accused Nudura ICFs; (2) the accused Reward Wall's ICFs; and (3) the accused Amvic ICFs. Integraspec does not dispute that the accused Nudura ICFs have only a single row of alternating projections and recesses on a given panel. Although Integraspec characterizes the accused Reward Wall ICFs as having two rows of "interconnecting means," Integraspec does not dispute that they have only a single row of alternating projections and recesses on a given panel. Thus, the accused Nudura ICFs and the accused Reward Wall ICFs are within the scope of the surrender resulting from the amendment narrowing the scope of Claim 1, and do not infringe the '933 Patent under the doctrine of equivalents.

Unlike the accused Nudura ICFs and the accused Reward Wall ICFs, Integraspec contends that the accused Amvic ICFs have "at least two" rows of alternating projections and recesses on a given panel.[20] It contends that there are three

---

*Tech., Inc. v. Cat Contracting, Inc.,* 385 F.3d 1360, 1370 (Fed.Cir.2004); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003)):

> [T]he primary consideration in determining when an amendment bears only a tangential relation to the equivalent in question is "whether the reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent."
> . . .
> As we have stated, "an amendment made to avoid prior art that contains the equivalent in question is not tangential[.]"

[20] To the extent Integraspec has characterized the accused Amvic ICFs as having a single row of projections and recesses per panel, they would, like the accused Nudura and Reward Wall ICFs, be within the scope of the surrender resulting from the amendment narrowing Claim 1's scope, and would not infringe the '933 Patent under the doctrine of equivalents.

18

rows of alternating projections and recesses on a panel of an accused Amvic ICF. Assuming it is proper to characterize the accused Amvic ICFs as having three rows of projections and recesses on a single panel or sidewall, it appears that, between rows, projections are next to projections and recesses are next to recesses. Therefore, the accused Amvic ICFs, even as characterized as having "at least two rows" of projections and recesses, appear to be within the scope of the surrender resulting from the amendment narrowing the scope of Claim 1, and do not infringe the '933 Patent under the doctrine of equivalents.

## CONCLUSION

For the reasons stated above, the Court finds that the accused ICFs do not infringe the '933 Patent, either literally or under the doctrine of equivalents. Accordingly,

IT IS ORDERED:

1. The following motions are granted:

    a. The Motion for Summary Judgment (Filing No. 169) filed by Defendants Polyform, A.G.P., Inc. and Nudura Corporation;

    b. The Motion for Partial Summary Judgment (Filing No. 178) filed by Defendant Reward Wall Systems, Inc.;

    c. The Motion for Partial Summary Judgment (Filing No. 189) filed by Defendant Amvic Corporation, are granted;

2. All claims of infringement asserted against Defendants Polyform, A.G.P., Inc., and Nudura Corporation, are dismissed;

3. The claims of infringement asserted against Defendant Reward Wall Systems, Inc., with respect to its eForm ICF products are dismissed; and

4. The claims of infringement asserted against Defendant Amvic Corporation with respect to its Amvic ICF Block products are dismissed.

Dated this 26th day of November, 2012.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge