IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

PHIL-INSUL CORP., d/b/a INTEGRASPEC,          )
                                              )
                    Plaintiff,                )          **8:12CV91**
                                              )
          vs.                                 )     **MEMORANDUM AND ORDER**
                                              )
REWARD WALL SYSTEMS, INC.;                    )
BUILDBLOCK BUILDING SYSTEMS, LLC;             )
NUDURA CORPORATION; POLYFORM,                 )
A.G.P., INC.; and AMVIC CORPORATION,          )
                                              )
                    Defendants.               )

       This matter is before the court on the "Motion for Summary Judgment for Non-

Infringement" filed by Defendant BuildBlock Building Systems, LLC (BuildBlock), Filing No.

205, and the "Motion for Partial Summary Judgment for Noninfringement of the Accused

iForm Devices" filed by Defendant Reward Wall Systems, Inc. (Reward Wall), Filing No.

218.  For the following reasons, BuildBlock's and Reward Wall's motions will be granted.

**BACKGROUND**

       U.S. Patent No. 5,428,933 (the '933 Patent) was issued to Michel Philippe on July

4, 1995, and a reexamination certificate was issued on September 21, 2010.  *See, e.g.*,

Compl. ¶¶ 13, 16, Filing No. 1.  Plaintiff Phil-Insul Corporation, d/b/a IntegraSpec (Phil-Insul

or IntegraSpec) is the assignee of record for the '933 Patent.  *See, e.g.*, *id.* ¶ 13.

       The '933 Patent relates to Insulating Concrete Forms ("ICFs") that may be stacked

"without regard to orientation" because they are designed to be "bi-directional and

revisable."  *Id.* ¶¶ 10, 12.  Generally, ICFs are two parallel panels made from expanded

polystyrene that are spaced apart by ties or webs.  *Id.* ¶ 10.  The ICFs are stacked on a

concrete footing or slab, and concrete is poured into the space between the ICFs' panels.

*See id.*  The concrete forms a wall, and the ICFs are left in place to provide insulation for the wall and other benefits.  *See id.* ¶¶ 10-11.  ICFs that are capable of being stacked without regard to orientation provide additional efficiency advantages that other ICF designs cannot offer.  *See id.* ¶ 12.

IntegraSpec alleges that BuildBlock and Reward Wall have each infringed claims 3, 4, 5, 9, 19, 20, and 27 of the '933 Patent.  *See, e.g.*, Pl.'s Br. Opp'n BuildBlock's Mot. for Summ. J. at 9 ¶ 52, Filing No. 214; Annis Aff., Ex. B, Pl.'s Disclosure of Asserted Claims and Prelim. Infringement Contentions, Ex. D at 4 (CM/ECF p. 30 of 361), Filing No. 227-1. Claim 1 is an independent claim, and claims 3, 4, 5, and 9 depend from claim 1.  *E.g.*, Pl.'s Br. Opp'n BuildBlock's Mot. for Summ. J. at 8-9 ¶¶ 48-48, Filing No. 214.  Claim 19 is also an independent claim, and claims 20 and 27 depend from claim 19.  *E.g., id.* at 9 ¶¶ 49-51.

## A.  The Independent Claims

The parties' briefs focus mainly on the issue of whether BuildBlock and Reward Wall have infringed the independent claims (*i.e.*, claims 1 and 19).  *See generally* Filing Nos. 206, 214, 216, 218, 239, 242.  *See also Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." (quoting *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989)).  Claim 1 states,[1]

> In [an] *a bi-directional and reversible* insulating construction member having *substantially planar ends and* top and bottom edges and interconnecting means on said top and *on said* bottom edges, the

---

[1] Italicized words were added by IntegraSpec during the reexamination of the '933 Patent.  Bracketed words were deleted from the claims during the reexamination and are no longer included in the claims.

improvement wherein *each* said *top* interconnecting means [comprise] *and each said bottom interconnecting means has a pattern, each pattern comprising* at least two *longitudinally extending* rows of alternating, *continuous, immediately adjacent* projections and recesses, *extending continuously along the entire length of said top and bottom edges, the end projection in one row flush with at least a portion of one of said end planes, within each said pattern each of* said projections and recesses *in each one of said at least two rows within said pattern* being of substantially the same dimension, wherein *within each said pattern* said recess of one row is adjacent said projection of the other row, and wherein said interconnecting means *patterns* on said top and bottom edges are *the same and are* offset arranged such that said recess of one row *in said pattern* on said top edge is opposed to said projection of an opposite row [of] *in said pattern on* said bottom edge; whereby said insulating construction member can be interconnected with a like member in a bidirectional [or] *and* reversible manner.

Claim 19 states,

> *A bi-directional and reversible insulating construction block comprising:*
>
> *a pair of substantially parallel side members having top and bottom edges and substantially planar ends;*
>
> *joining means interconnecting said side members;*
>
> *interconnecting means on said top and bottom edges, each said interconnecting means including substantially identical patterns including at least two longitudinal rows of alternating rectangular projections and recesses in each of said patterns, each row in each said pattern comprising more than one projection and more than one recess, which such alternating projections and recesses being continuous along the entire length of said rows and contiguous one with another, the end projection in one row flush with at least a portion of one of said end planes, wherein said recess of one row in each said pattern is adjacent said projection of the other row in the same pattern, within each said pattern, each of said projections and recesses in each one of said at least two rows having substantially the same dimensions;*
>
> *wherein the interconnecting means patterns on said top and bottom edges are substantially offset arranged such that said recess of one row in said pattern on said top edge is opposed to said projection of an opposite row on said bottom edge; whereby said construction block can be interlocked with a like block in a bi-directional and reversible manner.*

*E.g.*, Compl., Ex. A, Ex Parte Reexamination Certificate ¶¶ 1, 19, Filing No. 1-1.

## B. The Construction of the Independent Claims

3

The limitation "substantially the same dimension," which appears in both claim 1 and claim 19 as part of the description of the projections and recesses along the top and bottom edges of the ICF, is central to the pending motions.[2]   On June 29, 2012, Chief Judge Laurie Smith Camp held a *Markman* hearing, and in a memorandum and order dated July 19, 2012, she construed "substantially the same dimension" to mean "the same measurable length, breadth, area, and volume, with only minor variations in dimension of up to about 10%."   *See* Mem. & Order on Claim Construction at 20-27, 31, Filing No. 168.   Two key points addressed in the chief judge's claim construction memorandum merit brief review.

### 1.   "Dimension"

The chief judge rejected IntegraSpec's proposal that the word "dimension" in the limitation "substantially the same dimension" refers "only to the linear dimension measured along a projection's or a recess's longitudinal axis."   Mem. & Order on Claim Construction at 20, Filing No. 168.   Instead, she agreed with the defendants "that 'dimension' refers to all three dimensions of a projection and recess, not just the measurement of the recesses and projections taken along their longitudinal axes."   *Id.*

To reach this conclusion, the chief judge reviewed the prosecution history and found that in contrast to its current position, Phil-Insul argued before the patent office that the term "dimension" meant more than just a measurement of the longitudinal axis of a

---

[2] As noted above, Claim 1 states, "*within each said pattern each of* said projections and recesses *in each one of said at least two rows within said pattern* being of **substantially the same dimension**," and Claim 19 states, "*within each said pattern, each of said projections and recesses in each one of said at least two rows having* **substantially the same dimensions**."   *E.g.*, Compl., Ex. A, Ex Parte Reexamination Certificate ¶¶ 1, 19, Filing No. 1-1 (bold emphasis added).

projection or recess.  She noted that after claims 1 and 19 were rejected by the patent office as being anticipated by U.S. Patent No. 5,123,222 (Guarriello '222), Phil-Insul argued that because Guarriello '222 did not disclose projections and recesses that were "substantially the same dimension," it was distinguishable from the '933 Patent.  In support of its argument, Phil-Insul stated,

> [U]sing ordinary dictionary definitions, the phrase "said projections and recesses being of substantially the same dimension" necessarily means that the projections and recesses have, essentially or in substance, the same measurable length, breadth, area, and volume.  There is nothing in the specification that in any way teaches away from this interpretation; indeed the specification is entirely consonant with these definitions.

*Id.* at 22 (quoting Joint Ex. 4, Reexamination History at INT001807, Filing No. 92-7) (emphasis omitted).

The chief judge added,

> Thereafter, the patentee attempted to amend Claim 1 and to add Claim 19 to the '933 Patent.  The patentee tried to add to Claim 1 "measured along a longitudinal axis" after "substantially the same dimension."  (Filing No. 92-4, at INT001157 (emphasis in original).)  The patentee also tried to include the language "substantially the same dimension measured along the longitudinal axis" within Claim 19.  (*Id.* at INT001160 (emphasis in original).) . . . .

> On March 15, 2010, the patent office stated that "examiner notifies applicant of the language of claims 1 [and] 19 to 'measured along the longitudinal axis' should be deleted as they appear to broaden the claims[.]" (Filing No. 92-4, at INT000996 (emphasis in original).) . . . On March 16, 2010, the patentee deleted from Claims 1 and 19 the phrase "measured along the longitudinal axis" (*Id.* at INT001013), and stated "[o]ut of an abundance of caution, [that it] wished to make clear that the statements" the examiner made on March 15, 2010, were "correct in all respects and those changes were incorporated" into the amendments "filed on March 16, 2010." (*Id.* at INT000991.)  The examination certificate issued thereafter.

> Thus, the prosecution history makes clear that the patentee limited the meaning of "substantially the same dimension" to include more than just the longitudinal axis of an ICF.  The prosecution history indicates that the

patentee argued intentionally that "dimension" referred to more than just the longitudinal axis of a projection and/or recess to distinguish the '933 Patent from the prior art. Even if the patentee made an incorrect statement when distinguishing the '933 Patent from the prior art, "[a] person of reasonable intelligence" would have relied on the statement; it is not contrary to the claim language, the specification, or the prosecution history. . . . Furthermore, a strong inference may be drawn from the prosecution history that the patent office recognized Claims 1 and 19 would be invalid if Claims 1 and 19 were amended to state that "dimension" referred only to the longitudinal axis of an ICF, and the patentee expressly stated that it believed this statement to be correct in all respects and deleted those words from Claims 1 and 19.

*Id.* at 24-25 (citations omitted).

### 2. "Substantially"

The chief judge also found that, based on the prosecution history, Phil-Insul limited the meaning of the word "substantially" in Claims 1 and 19 "to the numeric constraint of 'minor variations in dimension of up to about 10%.'" Mem. & Order on Claim Construction at 25, Filing No. 168. She explained,

The prosecution history shows that the claims encompass more than just projections and recesses with unintentional deviations in dimension. . . . The prosecution history [also] makes clear that although the patent office considered "variations of about 1 to 2%" to be the broadest reasonable interpretation of "minor variations," that interpretation was not required for the '933 Patent to overcome the prior art. The projections and recesses of the prior art "var[ied] by significantly more than 2%;" they varied by "approximately 20%." Furthermore, after the patent office gave "minor variations, such as those implicit in the manufacturing process" its broadest reasonable interpretation, the patentee clarified that a person [of] ordinary skill in the art of concrete construction at the time of the invention would consider "substantially the same dimension" to mean that the "dimensions" of projections and/or recesses could vary by up to about 10% and still be considered "substantially the same." The patent office did not take issue with the patentee's clarification, and the reexamination certificate issued.

*Id.* at 25-26 (citations and footnotes omitted).

Based on the foregoing analysis, the chief judge concluded that "[c]onstruing 'dimension' to mean 'the same measurable length, breadth, area and volume,' and

'substantially,' when it is used in the phrase 'substantially the same dimension,' to mean 'with only minor variations in dimension of up to about 10%' will ensure that Claims 1 and 19 'were not construed one way in order to obtain their allowance and in a different way against' the Defendants." *Id.* at 26 (quoting *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005)).

This case was later reassigned from Chief Judge Smith Camp to the undersigned judge. *See* Filing Nos. 228-229. Despite this reassignment, the chief judge's claim construction remains the law of the case. *See, e.g.*, *AFG Industries, Inc. v. Cardinal IG Co., Inc.*, 375 F.3d 1367, 1372 (Fed. Cir. 2004) (discussing the law of the case doctrine and its exceptions). The pending motions will therefore be analyzed using the chief judge's construction of the relevant terms.

### C. Facts Material to BuildBlock's Pending Motion

"BuildBlock has sold ICF products called the 'BuildBlock ICF' during the period commencing with the date that is six years prior to the date" of the filing of the complaint. BuildBlock's Br. at 2 ¶ 6, Filing No. 206. Three of these products–"the standard form," "the 90° standard form," and "the 45° standard form" (collectively, the Accused BuildBlock Products)–are alleged to infringe the '933 Patent. *Id.* ¶¶ 7-8. Each of the Accused BuildBlock Products "has the same standardized pattern of projections and recesses along the top and bottom sides of the form," and the products have not changed during the relevant time period. *Id.* ¶¶ 9, 13.

BuildBlock contends that "[t]he standard pattern of projections and recesses on each of the Accused BuildBlock Products includes (1) an exterior longitudinally extending row that has a series of large projections in alternating fashion with a series of rectangular

7

recesses; and (2) an interior longitudinally extending row that has a series of medium projections in alternating relationship with a 'U-shaped' recess and a small projection, where the small projection is positioned within the 'U-shaped' recess." *Id.* ¶ 14.  It has also submitted charts comparing the differences in volume between the various projections and recesses in both rows.  *Id.* ¶¶ 17-18.  In response, IntegraSpec submits that 1) there are no "U-shaped" recesses in the Accused BuildBlock products, and 2) differences between projections and recesses that are not on the same row should be disregarded.  *See* IntegraSpec's Response to BuildBlock's Mot. at 5-6, ¶¶ 30-33, Filing No. 214.  IntegraSpec concedes, however, that alternating projections on the interior row of the Accused BuildBlock Products differ in volume, and that the first type of projection (which is labeled "P2" in the parties' diagrams) is 20% larger than the second (which is labeled "P3").  *See, e.g.*, *id.* ¶¶ 32-33.  IntegraSpec also concedes that given the court's construction of the relevant claim limitations, the Accused Buildblock Products do not literally infringe the '933 Patent.  *See, e.g., id.* at 27 (stating that claims 1 and 19, as construed by the court, allow variation of only up to about 10%, which "precludes literal infringement").  During oral argument (and in its reply brief), BuildBlock asserted that even if the court accepts IntegraSpec's arguments about the lack of "U-shaped" recesses and refrains from comparing projections and recesses on different rows, IntegraSpec's concessions warrant the entry of summary judgment in BuildBlock's favor.  *E.g.*, BuildBlock's Reply Br. at 10, Filing No. 216.

### D.  Facts Material to Reward Wall's Pending Motion

"Reward Wall has sold an ICF product called the iForm ICF . . . during the period commencing with the date that is six years prior to the date" of the filing of the complaint.

8

Reward Wall's Br. at 6 ¶ 16, Filing No. 219.  Four models of the iForm ICF (i.e., "the straight form," "the 90° standard form," "the 45° standard form," and "the T-form long return and T-form short return" (collectively, the Accused Reward Wall Products)) are alleged to infringe the '933 Patent.  *Id.* at 6-7 ¶¶ 17-18.[3]  There is no evidence that any of the Accused Reward Wall Products has been altered in a material way during the relevant time period.

The Accused Reward Wall Products have projections and recesses on the top and bottom edges of the form; however, ejector pin indentations and fill gun indentations appear along the bottom edges of the products.  *See* IntegraSpec's Response to Reward Wall's Mot. at 3 ¶ 20, Filing No. 239.  Thus, the top edges of the products have projections and recesses of substantially identical size and shape, but the ejector pin indentations and fill gun indentations alter the size and shape of the projections and recesses on the bottom edges of the products.  *See, e.g.*, *id.* at 7-8 ¶ 22; Reward Wall's Index, Ex. A, Pfeiffer Aff. Exs. A-E, Filing Nos. 221-1 through 224-1.  IntegraSpec argues that these indentations are not significant.  *E.g.*, IntegraSpec's Response to Reward Wall's Mot. at 3 ¶ 21.  It concedes, however, that each of the Accused Reward Wall Products "includes projections that do not have the same measurable length, breadth, area and volume, and the differences between these measurements are greater than 10%."  Reward Wall's Br. at 10 ¶¶ 27-28, Filing No. 219; IntegraSpec's Response to Reward Wall's Mot. at 3, Filing No. 239.  It also concedes that given the court's construction of the term "dimension," it cannot argue that the Accused Reward Wall Products literally infringe the '933 Patent.  *Id.* at 19.

---

[3] It appears that Reward Wall alternately refers to the 90° standard form as "the 90° corner form," and alternately refers to the 45° standard form as "the 45° corner form."  *See* Reward Wall's Br. at 6-7 ¶¶ 17-18, Filing No. 219.  The court infers that the parties consider both versions of the T-form to be a single "model" of the iForm ICF.

# DISCUSSION

## A. Law

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See also Jones v. Minnesota Dept. of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008). In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970), and the court must not weigh evidence or make credibility determinations, *Anderson*, 477 U.S. at 249.

It is the moving party's burden to establish that no genuine issue of material fact exists. Fed. R. Civ. P. 56(a); *Adickes*, 398 U.S. at 157. Therefore, if the moving party does not meet its initial burden, summary judgment must be denied even if no affidavits or other evidence has been submitted in opposition to the motion. *See Adickes*, 398 U.S. at 159-60. When the nonmoving party bears the burden of proof on a particular issue at trial, however, the moving party may be able to discharge its initial burden merely by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After the moving party has met its burden, "the non-moving party may not rest on the allegations of his pleadings,

10

but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Singletary v. Missouri Dept. of Corr.*, 423 F.3d 886, 890 (8th Cir. 2005).

The patentee has the burden of proving infringement by a preponderance of the evidence. *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004). Infringement is analyzed in a two-step process. First, the court construes the asserted claims as a matter of law to determine their meaning, and second, the trier of fact compares the properly construed claims to the accused product to determine whether it contains each limitation of the claims, either literally or under the doctrine of equivalents. *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003). As noted previously, the asserted claims have been construed, and IntegraSpec concedes that given the court's construction of the claims, the Accused BuildBlock or Reward Wall Products do not literally infringe the '933 Patent. Thus, the pending motions turn on whether IntegraSpec can show that the accused products infringe the '933 Patent under the doctrine of equivalents.

Patent infringement under the doctrine of equivalents is established on a limitation-by-limitation basis; in other words, an accused device must be shown to include an equivalent for each literally absent claim limitation (here, the "substantially same dimension" limitation). *See Dawn Equip. Co. v. Kentucky Farms*, 140 F.3d 1009, 1015 (Fed. Cir. 1998) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997)). There are "two articulations of the test for equivalence." *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008). "Under the insubstantial differences test, 'an element in the accused device is equivalent to a claim limitation if the only differences between the two are

11

insubstantial.'" *Id.* (quoting *Honeywell Int'l Inc. v. Hamilton Sunstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004)) (brackets omitted).  "Alternatively, under the function-way-result test, an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'"  *Id.* (quoting *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1209-10 (Fed. Cir. 2001)).

Infringement under the doctrine of equivalents is a question of fact.  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1013 (Fed. Cir. 2006). Nevertheless, there are two "legal limitations on the application of the doctrine of equivalents" that may be determined by the court on a pretrial motion for summary judgment.  *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997).

First, "[u]nder prosecution history estoppel, a patentee may not seek to recapture as an equivalent subject matter surrendered during prosecution."  *Trading Technologies Intern., Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1355 (Fed. Cir. 2010).  "The estoppel may arise from matter surrendered as a result of amendments to overcome patentability rejections, or as a result of argument to secure allowance of a claim."  *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 826 (Fed. Cir. 1999) (quoting *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998)).  To determine whether amendment-based estoppel applies, "a court must examine the reason why an applicant amended a claim."  *Id.* (quoting *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1355 (Fed. Cir. 1998)).  If this "examination indicates that a patent applicant has made a substantive change to his claim that clearly responds to an examiner's rejection of that claim as

unpatentable over prior art, prosecution history estoppel applies to that claim; only the question of the scope of the estoppel remains." *Id.* (quoting *Bai*, 160 F.3d at 1355). "On the other hand, if the claims were amended for a reason that was not 'related to patentability,' prosecution history estoppel does not apply absent a 'clear and unmistakable surrender' of certain subject matter." *Id.* at 828. If the record does not reveal the reason for a limiting amendment, "a court must presume that the amendment was made for purposes of patentability and that prosecution history estoppel applies, and provide the patentee with an opportunity to rebut that presumption." *Id.* (citing *Warner-Jenkinson Co., Inc.*, 520 U.S. at 33-35). *See also Glaxo Wellcome, Inc. v. Impax Laboratories, Inc.*, 356 F.3d 1348, 1351-56 (Fed. Cir. 2004). In contrast to amendment-based estoppel, argument-based estoppel results from "arguments made during prosecution that show 'a clear and unmistakable surrender of subject matter.'" *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1251 (Fed. Cir. 2000) (quoting *Sextant Avionique, S.A.*, 172 F.3d at 828 n.3). Whether the estoppel is amendment-based or argument-based, "[t]he scope of estoppel, *i.e.*, what subject matter has been surrendered during prosecution by the patentee, is to be viewed from the vantage point of a reasonable competitor of the patentee, and is determined with reference to the prior art and any amendments and/or arguments made in an attempt to distinguish such art." *Sextant Avionique, S.A.*, 172 F.3d at 826-27 (citations omitted).

Second, "[u]nder the 'all-elements rule,' a patentee may not assert 'a theory of equivalence that would entirely vitiate a particular claim element." *Trading Technologies Intern., Inc.*, 595 F.3d at 1355 (quoting *Warner-Jenkinson Co., Inc.*, 520 U.S. at 39 n.8) (alteration brackets omitted). This rule requires the court "to consider 'the totality of

circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Id.* (quoting *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1359 (Fed. Cir. 2005)).  The all-elements rule, or "claim vitiation," will apply "when there is a 'clear, substantial difference or a difference in kind' between the claim limitation and the accused product."  *Id.* (quoting *Freedman Seating Co.*, 420 F.3d at 1360).  "It does not apply when there is a 'subtle difference in degree.'" *Id.* (quoting *Freedman Seating Co.*, 420 F.3d at 1360).  *See also DuPuy Spine, Inc.*, 469 F.3d at 1018-19 ("A holding that the doctrine of equivalents cannot be applied to an accused device because it 'vitiates' a claim limitation is nothing more than a conclusion that the evidence is such that no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim, or that the theory of equivalence to support the conclusion of infringement otherwise lacks legal sufficiency.").

## B. Analysis

As noted previously, IntegraSpec concedes that given the court's construction of the limitation "substantially the same dimension," none of the Accused BuildBlock or Reward Wall Products literally infringes the '933 Patent.  IntegraSpec maintains, however, that it can prove infringement under the doctrine of equivalents.  BuildBlock and Reward Wall each argue that they are entitled to summary judgment because 1) prosecution history estoppel by amendment, 2) prosecution history estoppel by argument, and 3) the all-

elements rule prevent IntegraSpec from establishing infringement under the doctrine of equivalents.[4]  Their arguments will be analyzed in turn.

### 1.  Prosecution History Estoppel by Amendment

BuildBlock and Reward Wall argue that IntegraSpec narrowed the scope of claims 1 and 19 during the reexamination of the '933 Patent by amending those claims to state that "each of" the projections and recesses must be of substantially the same dimension. Reward Wall's Br. at 22-23, Filing No. 219.  They add that this amendment was made specifically to overcome a June 26, 2007, decision of the Board of Patent Appeals and Interferences (the Board) wherein claims 1 and 19 were rejected as being obvious in view of Guarriello '222 and other patents.  *Id.*  BuildBlock and Reward Wall submit that because the Accused Products fall within the scope of surrender that resulted from the amendment, IntegraSpec is now estopped from arguing that the Accused Products infringe the '933 Patent under the doctrine of equivalents.  *Id.* at 23-24.

The Board's June 26, 2007, decision does indeed state that claims 1 and 19 "are rejected under 35 U.S.C. § 102(b) as anticipated by Guarriello ['222]."  Annis Aff., Ex. C, Decision on Appeal at 3 (CM/ECF p. 154 of 361), Filing No. 227-1.  The Board explained, "Patentee has combined known elements in a predictable fashion and did not produce a new or different function for the prior art elements.  Specifically, one of ordinary skill in the art desiring an insulating block that is capable of being stacked in a bidirectional manner without the need for mortar that is lightweight, but rigid, in structure, would have been

---

[4] Reward Wall raises all three of these arguments in its briefs.  *See* Filing Nos. 219, 242.  BuildBlock's briefs raise only argument-based prosecution history estoppel and the all-elements rule.  *See* Filing Nos. 206, 216.  During the hearing held on June 11, 2013, BuildBlock adopted Reward Wall's argument that amendment-based prosecution history estoppel prevents IntegraSpec from relying on the doctrine of equivalents.

guided to employ Horobin's square projections and recesses with Guarriello's alternating rows of projections and recesses.  Accordingly, we conclude that Patentee's claims are obvious in light of the prior art."  *Id.* at 29-30 (CM/ECF p. 180-181 of 361).  At the time of the Board's decision, claim 1, which was noted to be "generally representative of the claims on appeal," stated that the "interconnecting means comprise at least two rows of alternating projections and recesses, said projections and recesses being of substantially the same dimension."  *Id.* at 2-3 (CM/ECF p. 153-154 of 361).  Claim 1 did not specify that "each of" the projections and recesses were of substantially the same dimension.

As the defendants correctly note, Phil-Insul amended claim 1 on July 30, 2008, by making the following underlined additions (among others): "said interconnecting means comprises at least two <u>longitudinally extending</u> rows of alternating<u>, continuous, immediately adjacent</u> projections and recesses,  <u>each of</u> said projections and recesses <u>in said at least two rows</u> being of substantially the same dimension <u>measured along a longitudinal axis</u> . . . ."  Annis Aff., Ex. C, Supplemental Amendment at 12, 59 (CM/ECF p. 263, 310 of 361), Filing No. 227-1.  In addition, claim 19 was amended to state, "each of said projections and recesses in said at least two rows having substantially the same dimension measured along the longitudinal axis . . . ."  *Id.* at 15 (CM/ECF p. 266 of 361).  In its remarks, Phil-Insul explained these additions as follows:

> The claim has also been amended to state that "each" of the projections and recesses in the at least two rows are of substantially the same dimension. This overcomes the presumed Board interpretation of the claim as appealed which did not include the word "each" and therefore could have been construed to mean that any one projection having substantially the same dimension as any one recess meets the language of the claim. Of course, if some of the projections did not have the same longitudinal dimension as some of the recesses, the forms could not be interlocked at all. It is the fact that the Horobin projections on the bottom of the form do not have the same

dimension as the projections on the top of the form that prevents the Horobin form from being reversible.  Since this is a major advantage of Patentee's form compared to either of the Horobin forms, <u>this amendment clearly distinguishes any combination of Horobin and Guarriello</u>.  Finally, . . . the dimensions are now clearly stated as measured along the longitudinal axis so as to prevent an interpretation that the measurements are made transversely.

*Id.* at 52-53 (CM/ECF p. 303-304 of 361) (emphasis added).

In light of the foregoing, the court agrees with BuildBlock and Reward Wall that Phil-Insul amended the relevant independent claims in response "to an examiner's rejection of [those] claim[s] as unpatentable over prior art," and therefore "prosecution history estoppel [by amendment] applies to [those] claim[s]." *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 826 (Fed. Cir. 1999) (quoting *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1355 (Fed. Cir. 1998)).[5]

The court is not persuaded, however, that the Accused BuildBlock and Reward Wall Products fall within the scope of the surrender that resulted from these amendments.  *See Sextant Avionique, S.A.*, 172 F.3d at 826 (explaining that when prosecution history estoppel applies, the scope of the estoppel remains to be determined, and the estoppel "may or may not be fatal to application of a range of equivalents broad enough to encompass a particular accused product").  As noted above, the amendments cited by BuildBlock and Reward Wall not only added the words "each of" to claims 1 and 19, but also added the words "measured along a [or the] longitudinal axis" to modify the limitation "substantially the same dimension."  BuildBlock and Reward Wall do not argue that each of the projections and recesses on their Accused Products are not of "substantially the same dimension <u>measured</u>

---

[5] To be clear, prosecution history estoppel is <u>established</u>, not <u>presumed</u>, under these circumstances. *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 826-28 (Fed. Cir. 1999).  Thus, there is no need to analyze whether IntegraSpec may rebut a presumption that estoppel applies.

along a longitudinal axis."[6]   Instead, their position is based on the court's construction of

the term "substantially the same dimension," which incorporates not only length, but

"breadth, area, and volume."  *See, e.g.*, Reward Wall's Br. at 24, Filing No. 219.  *See also*

Reward Wall's Reply Br. at 14, Filing No. 242 (stating, inaccurately, that the amendments

"necessarily narrowed the scope of claims 1 and 19 to require that each and every

projection and recess be of substantially the same measurable length, width, breadth[,]

area and volume." (emphasis added)).  The court is mindful that BuildBlock and Reward

Wall have submitted an alternate argument that Phil-Insul surrendered the limitation

"measured along a [or 'the'] longitudinal axis" during the reexamination of the '933 Patent.[7]

Also, as noted previously, the court's construction of the term "substantially the same

dimension" is the law of the case.  Nevertheless, it simply cannot be said that the particular

amendments cited by BuildBlock and Reward Wall, "viewed from the vantage point of a

reasonable competitor of the patentee," had a limiting effect that is "fatal to application of

a range of equivalents broad enough to encompass" the Accused Products.  *Sextant*

*Avionique, S.A.*, 172 F.3d at 826.  On the contrary, by inserting the limitation "measured

---

[6] The court finds that there is a genuine dispute whether the projections and recesses of the Accused BuildBlock and Reward Wall Products are, in fact, substantially the same length measured along the longitudinal axis.  BuildBlock relies on the disputed "U-shaped" recess to avoid conceding that the projections and recesses on the Accused BuildBlock Products are all of substantially the same length, *see* BuildBlock's Br. at 5 ¶ 17, Filing No. 206, but during oral argument it invited the court to set aside this dispute when ruling on the pending motions.  For its part, Reward Wall attempts to avoid conceding that the projections and recesses on the Accused Reward Wall Products are all of substantially the same length by combining recesses across two different rows.  *See* Reward Wall's Br. at 7-9 ¶¶ 22-23, 26, Filing No. 219.

[7] This argument will be addressed presently.  Because BuildBlock and Reward Wall base their amendment-based estoppel argument solely on the July 30, 2008, amendments, however, the court need not determine whether an amendment-based estoppel might extend to the Accused Products if the July 30 amendments were coupled with subsequent amendments (e.g., the March 16, 2010, amendments discussed below).

along a [or the] longitudinal axis," the amendments broadened the range of equivalents enough to capture the Accused Products.

In short, although prosecution history estoppel applies by virtue of Phil-Insul's July 30, 2008, amendments narrowing claims 1 and 19, the defendants have not shown that the Accused BuildBlock and Reward Wall Products fall within the scope of surrender resulting from those amendments.   Thus, the amendments do not estop IntegraSpec from attempting to establish infringement under the doctrine of equivalents.

### 2.  Prosecution History Estoppel by Argument

It remains to be determined whether the Accused Products fall within the scope of surrender resulting from arguments made by Phil-Insul during the prosecution of the '933 Patent.  BuildBlock and Reward Wall each state that "[b]y arguing during prosecution that the 'substantially the same dimension' limitation meant that the projections and recesses have the same 'measurable length, breadth, area and volume' to avoid the prior art, IntegraSpec surrendered any scope of equivalents that would cover products with projections and recesses of different shapes and sizes." Buildblock's Br. at 19, Filing No. 206 (footnote omitted); Reward Wall's Br. at 25, Filing No. 219 (footnote omitted).   In support of their position, they rely primarily on the arguments that they presented to the chief judge during the claim construction phase of this action.  *See* Buildblock's Br. at 19 n.2, Filing No. 206 (citing Filing Nos. 93 and 101); Reward Wall's Br. at 25 n.5, Filing No. 219 (citing Filing Nos. 93 and 101).[8]

---

[8] For ease of reference, the court will cite the exhibits submitted in connection with the parties' claim construction briefs (as opposed to the exhibits submitted in support of the parties' motions for summary judgment).

The record shows that on September 16, 2004, the patent examiner issued an Office Action stating that claims 1 and 19 were rejected because, among other things, Guarriello '222 disclosed an insulating construction member with "projections and recesses being of substantially the same dimension."  Joint Ex. 4 at INT001848-49, 1851, 1853-54 (CM/ECF p. 173-74, 176, 178-79 of 270), Filing No. 92-7 (emphasis omitted).  In response to this Office Action, Phil-Insul submitted amendments to the patent office on November 16, 2004. *Id.* at INT001796 (CM/ECF p. 122 of 270).  In the remarks accompanying these amendments, Phil-Insul disputed the patent office's rejection of claims 1 and 19 based on Guarriello '222 by arguing that "Guarriello '222 does not anticipate the instant invention" because it "does not teach or anticipate projections or recesses that are substantially the same dimension."  *Id.* at INT001806 (CM/ECF p. 131 of 270).  *See also id.* at INT001820 (CM/ECF p. 145 of 270) (stating that the patentee's objections to the rejection of claim 19 are the same as those "given above").  As the chief judge noted on page 22 of her memorandum and order on claim construction, Filing No. 168, Phil-Insul argued,

> [U]sing ordinary dictionary definitions, the phrase "said projections and recesses being of substantially the same dimension" necessarily means that the projections and recesses have, essentially or in substance, the same measurable length, breadth, area, and volume. There is nothing in the specification that in any way teaches away from this interpretation; indeed, the specification is entirely consonant with these definitions.

Joint Ex. 4 at INT001807 (CM/ECF p. 132 of 270), Filing No. 92-7.

As noted previously, on June 26, 2007, the Board rejected claims 1 and 19 on the ground that they "are obvious in light of the prior art."   Joint Ex. 4 at INT001546 (CM/ECF p. 121 of 250), Filing No. 92-6.  Importantly, however, the Board also concluded that the examiner erred by rejecting claims 1 and 19 "as anticipated under 35 U.S.C. § 102(b) by

Guarriello" because "Guarriello does not describe insulating forms having projections and recesses having substantially the same dimensions."   *Id.* at INT001543 (CM/ECF p. 118 of 250).   In support of this conclusion, the Board cited the fact that the projections and recesses described in Guarriello '222 varied "significantly" in size.   *Id.* at INT001542 (CM/ECF p. 117 of 250).   In short, although the examiner had previously rejected claims 1 and 19 on the ground that Guarriello '222 anticipated an ICF with "projections and recesses being of substantially the same dimension," this ground for rejection was reversed after Phil-Insul argued that "substantially the same dimension necessarily means that the projections and recesses have, essentially or in substance, the same measurable length, breadth, area, and volume."

Phil-Insul attempted to overcome the Board's rejection of claims 1 and 19 on the ground of obviousness by continuing to amend the claims.   As the court previously noted, on July 30, 2008, Phil-Insul amended claim 1 by adding the words "measured along a longitudinal axis" after the words "substantially the same dimension," and it amended claim 19 by adding the words "measured along the longitudinal axis" after the words "substantially the same dimension."   Joint Ex. 4 at INT001229, 1232 (CM/ECF p. 3, 6 of 250), Filing No. 92-5.   In an interview summary dated March 15, 2010, the patent office notified Phil-Insul that the language "measured along the longitudinal axis" should be deleted from claims 1 and 19 because it "appear[s] to broaden the claims."   *Id.* at INT000996 (CM/ECF p. 20 of 250), Filing No. 92-4.   The interview summary also states, "The formal written reply to the last office action must include the substance of the interview."   *Id.* (emphasis omitted).   On March 16, 2010, Phil-Insul filed a supplemental amendment deleting the phrase "measured along a [or the] longitudinal axis" from claims 1 and 19.   *Id.* at INT001007, 1011, 1013

(CM/ECF p. 31, 35, 37 of 250).  It also filed a second supplemental amendment on April 7, 2010, stating that it "wishes to make clear that the statements [by the examiner] in the Interview Summary . . . are correct in all respects and those changes were incorporated into Applicant's Supplement[al] Amendment filed on March 16, 2010."  *Id.* at INT00091 (CM/ECF p. 15 of 250).  The reexamination certificate issued in September 2010.

The prosecution history summarized above demonstrates that Phil-Insul made arguments during prosecution "that show 'a clear and unmistakable surrender of subject matter.'"  *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1251 (Fed. Cir. 2000) (quoting *Sextant Avionique, S.A.*, 172 F.3d at 828 n.3).  More specifically, the court finds that one of ordinary skill in the art would objectively conclude from this history that in order to gain issuance of the '933 Patent, Phil-Insul limited its claims to ICFs with projections and recesses having "the same measurable length, breadth, area, and volume."  Phil-Insul also clearly agreed with the examiner that adding  the phrase "measured along the longitudinal axis" would broaden the scope of the limitation "substantially the same dimension," and it deleted the phrase from claims 1 and 19 to avoid this broadening and thereby obtain the reexamination certificate.

In light of this unmistakable surrender of subject matter, IntegraSpec is estopped from asserting that ICFs with a row of projections and recesses that <u>do not</u> each have the same measurable length, breadth, area, and volume contain equivalents of the "substantially the same dimension" limitation.  There is no genuine dispute that the Accused BuildBlock and Reward Wall Products fall within the scope of this surrender.  Thus, as a matter of law, IntegraSpec cannot rely upon the doctrine of equivalents to establish that the Accused Products infringe the '933 Patent.  Furthermore, because IntegraSpec concedes

22

that there can be no literal infringement given the court's construction of the claims, BuildBlock's and Reward Wall's motions for summary judgment must be granted.

IntegraSpec argues that the defendants' prosecution history estoppel argument is based on a "distortion of the record" because the defendants refer to the "shape and size" of the projections and recesses, while claim 1 lacks a limitation "with respect to shape." IntegraSpec's Response to BuildBlock's Mot. at 30-31, Filing No. 214.   This lack of precision in the defendants' argument does not undermine the court's analysis of the prosecution history, however.

Next, IntegraSpec emphasizes that the chief judge "did not hold that there was an estoppel based on argument" when construing the claims.   *Id.* at 30.   *See also* IntegraSpec's Response to Reward Wall's Mot. at 24-25, Filing No. 239.   This point is accurate insofar as it goes, but once again it does not undermine this court's analysis of argument-based prosecution history estoppel.

IntegraSpec also points out that "[t]here is no presumption with respect to argument estoppel," and it implies that the court's analysis of argument estoppel must "consider[]" the infringement determination that would be made by the trier of fact.   IntegraSpec's Response to BuildBlock's Mot. at 31, Filing No. 214.  Neither of these points is persuasive. To be clear, the court has not presumed that Phil-Insul's arguments to the patent office resulted in an estoppel, and the court is not persuaded that the issue of infringement under the doctrine of equivalents–which is indeed a question of fact–is intertwined with the preliminary legal question of whether the doctrine of equivalents is unavailable due to prosecution history estoppel.

IntegraSpec argues next that when all inferences are drawn in its favor, there is a genuine issue as to "whether there was a clear and unmistakable disavowal that 'dimension' related solely to the 'length' of the projections and recesses."  IntegraSpec's Response to Reward Wall's Mot. at 25, Filing No. 239.  Although IntegraSpec does not elaborate upon this argument, the court notes that when criticizing the chief judge's claim construction analysis, IntegraSpec maintained that it used the term "dimension" throughout the prosecution history to refer solely "to the longitudinal dimension of projections and recesses."  *Id.* at 24.  *See also* Pl.'s Opening Br. for Early Claim Construction, Ex. 7, Filing No. 96.  The court infers IntegraSpec's position to be that in light of this usage, there is no "clear and unmistakable disavowal that 'dimension' related solely to the 'length' of the projections and recesses."

The court has reviewed the excerpts from the prosecution history quoted by IntegraSpec, and it finds that relatively few of these excerpts clearly indicates that the word "dimension" refers only to "length" or a "longitudinal dimension."  *See* Pl.'s Opening Br. for Early Claim Construction, Ex. 7, Filing No. 96.  Nearly all of these excerpts are taken from documents dated between July 30, 2008 (when Phil-Insul amended the claims to add the phrase "measured along a [or the] longitudinal axis"), and February 17, 2009 (which predates the amendment deleting that phrase from the claims).  In any event, the court is persuaded that Phil-Insul unmistakably surrendered the position that "dimension" refers only to the length of the projections and recesses by 1) arguing that "'substantially the same dimension' necessarily means that the projections and recesses have, essentially or in substance, the same measurable length, breadth, area, and volume," and 2) agreeing

24

with the patent examiner that the phrase "measured along a [or the] longitudinal dimension" must be deleted from claims 1 and 19 to avoid broadening the claims.

Finally, IntegraSpec argues that "even if an argument estoppel existed, it does not disavow all potential equivalents from consideration by the Court." IntegraSpec's Response to Reward Wall's Mot. at 26, Filing No. 239. According to IntegraSpec, the Accused Reward Wall Products "fall outside the exclusion of the alleged estoppel" because "the exterior edge[s] of the projections" on those products are all of the same length. *Id.* at 27. This argument, which essentially redefines "substantially the same dimension" by restricting "dimension" to mean "the length of the exterior edge of the projections," is in direct conflict with Phil-Insul's argument to the Board that "'substantially the same dimension' necessarily means that the projections and recesses have, essentially or in substance, the same measurable length, breadth, area, and volume." IntegraSpec cannot reverse the position that it took to secure allowance of its claims at the patent office in order to prove infringement via the doctrine of equivalents. All of the Accused Products fall squarely within the scope of the estoppel, and BuildBlock's and Reward Wall's motions for summary judgment must be granted.

### 3. All-elements Rule

It is undisputed that the Accused Products include projections and/or recesses that differ in dimension by at least twice the 10% threshold specified in the court's construction of the limitation "substantially the same dimension." Reward Wall's Br. at 9-10 ¶¶ 27-28, Filing No. 219; IntegraSpec's Response to Reward Wall's Mot. at 3, Filing No. 239; IntegraSpec's Response to BuildBlock's Mot. at 5-6 ¶ ¶ 32-33, Filing No. 214. This is true

even when BuildBlock's "U-shaped" recesses are disregarded, and even when the projections and recesses on its Accused Products are not compared across rows.  *See* IntegraSpec's Response to BuildBlock's Mot. at 5-6 ¶ ¶ 32-33, Filing No. 214.  Thus, it cannot reasonably be said that there is a "subtle difference in degree" between the claim limitation and the Accused Products; rather, there is a "clear, substantial difference" that warrants application of the all-elements rule.  *Trading Technologies Intern., Inc.*, 595 F.3d at 1355 (quoting *Freedman Seating Co.*, 420 F.3d at 1360).

The court finds that given the undisputed evidence in the record, no reasonable jury could conclude that the Accused Products have the equivalent to projections and recesses of "substantially the same dimension."  In other words, the Accused Products' projections and recesses cannot be characterized as being an equivalent to "substantially the same dimension" without rendering that limitation (as construed by the court) meaningless.

IntegraSpec argues that because "BuildBlock cannot argue that each of the limitations, 'length, breadth, area, and volume' has been entirely vitiated," it cannot show that the all-elements rule is applicable.  IntegraSpec's Response to BuildBlock's Mot. at 28, Filing No 214.  More specifically, it argues that because the Accused BuildBlock Products have projections and recesses in a given row with the same length, "[t]he length dimension is not vitiated."  *Id.*  This argument cannot prevail unless the court's construction of the limitation "substantially the same dimension" is replaced with IntegraSpec's own construction that incorporates the phrase "measured along a longitudinal axis."  As explained previously, the chief judge's construction of the limitation is the law of the case, and this court will not redefine the limitation to focus solely on the "length" or "longitudinal" component of "dimension."

IntegraSpec also attempts to work around the all-elements rule by emphasizing the "function" component of the "function-way-result" for establishing equivalence.  *E.g.*, IntegraSpec's Response to BuildBlock's Mot. at 28-29, Filing No. 214.  Its argument, as the court understands it, is that because only the length component of the limitation "substantially the same dimension" is relevant to an ICF's ability to function bidirectionally and reversibly, differences in breadth, area, and volume simply cannot be "clear, substantial difference[s] or difference[s] in kind" that are sufficient to trigger the all-elements rule. *Trading Technologies Intern., Inc.*, 595 F.3d at 1355 (quoting *Freedman Seating Co.*, 420 F.3d at 1360).  This argument, like the previous one, invites the court to abandon the chief judge's construction of the limitation "substantially the same dimension" by ignoring the breadth, area, and volume components of it.  This will not be done.

IntegraSpec suggests that the all-elements rule does not apply because this is not "a case of direct opposites, that is, "'not X' if the claim specifically requires X.'" IntegraSpec's Response to BuildBlock's Mot. at 28, Filing No. 214 (quoting BuildBlock's Br. at 16, Filing No. 206).  The court disagrees.  The claims specifically require projections and recesses of "substantially the same dimension," and it is quite clear that the Accused Products do not have projections and recesses of "substantially the same dimension."

 Finally, IntegraSpec argues that the all-elements rule "is not a bar to the application of the DOE" and has "limited utility."  IntegraSpec's Response to Reward Wall's Mot. at 21, Filing No. 239.  In support of this argument, it quotes the following excerpt from *Deere & Company v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012):

> "Vitiation is not an exception to the doctrine of equivalents, but instead
> a legal determination that "the evidence is such that no reasonable jury could
> determine two elements to be equivalent."  The proper inquiry for the court

> is to apply the doctrine of equivalents, asking whether an asserted equivalent represents an "insubstantial difference" from the claimed element, or "whether the substitute element matches the function, way, and result of the claimed element."  If no reasonable jury could find equivalence, then the court must grant summary judgment of no infringement under the doctrine of equivalents.

(quoting *Warner-Jenkinson*, 520 U.S. at 39 n.8, 40) (citations omitted).

The court can discern no inconsistency between its application of the all-elements rule in this case and the description of the vitiation doctrine set forth in *Deere & Company*. The court has not described the all-elements rule as a "bar" to the application of the doctrine of equivalents, but rather a legal limitation on a patentee's ability to submit a question of equivalence to the trier of fact.  In applying the rule, the court has considered the evidence in a light favorable to IntegraSpec and asked whether the asserted equivalents represent an insubstantial difference from the claimed element.  The undisputed facts show that the Accused Products have projections and/or recesses that are not "substantially the same dimension."  Moreover, because the dimensions of projections and/or recesses on the Accused Products vary by at least twice the claimed threshold (as established by the court's construction of the limitation), the court has concluded that no reasonable jury could find that the Accused Products have the equivalent to projections and recesses of "substantially the same dimension."

Because prosecution history estoppel applies and IntegraSpec's theory of equivalence would entirely vitiate the limitation "substantially the same dimension," the court finds that the remaining arguments in IntegraSpec's briefs are immaterial, and judgment must be rendered in favor of BuildBlock and Reward Wall on the issue of infringement.  *See Warner-Jenkinson Co., Inc.*, 520 U.S. at 39 n.8.  Accordingly,

IT IS ORDERED that Defendant BuildBlock Building System LLC's Motion for Summary Judgment, Filing No. 205, and Defendant Reward Wall Systems' Motion for Partial Summary Judgment, Filing No. 218, are granted.

DATED this 5th day of September, 2013.

BY THE COURT

s/ Joseph F. Bataillon
United States District Judge

_____

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.